**Frank M. RICH, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7724.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 21, 1958.

Decided Nov. 12, 1958.

Charles W. Laughlin, Richmond, Va. (Court-appointed counsel), for appellant.

William F. Davis, Sp. Asst. to U. S. Atty., Norfolk, Va. (L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BARKSDALE, District Judge.

SOBELOFF, Chief Judge.

This appeal in forma pauperis is taken by Frank M. Rich from a conviction and life sentence for kidnapping Warner Thomas Davis, deputy sheriff of Ac-

comack County, Virginia, in violation of 18 U.S.C.A. § 1201. Davis, who surprised a group of men suspected of attempting to crack a safe in a supermarket at Onancock, Virginia, was captured, beaten and carried to Wye Mills, a point ninety miles north of the Maryland-Virginia line. A motion for a directed verdict of acquittal was made at the conclusion of the entire evidence, and was denied.

1. In this Court, the principal contention of the appellant is that he was denied the effective assistance of counsel in the trial in the District Court. The Court had appointed two competent and experienced lawyers to defend him, but after conducting an investigation of the case, in the course of which they went at their own expense to New York, they asked the Court to relieve them of their assignment. Before granting the request, the District Judge conferred with the defendant in the presence of the lawyers. The Judge did not inquire into the lawyers' reason for wishing to withdraw from the case, but the defendant stated that he knew the reason. The Court then appointed two other lawyers, likewise men of high standing at the Bar, and they too investigated the case. One of them visited New York in the course of his preparation for trial, also without reimbursement.

The appellant seeks to support his contention that he was denied the effective aid of counsel by pointing out that in the District Court the record contains no objection to the introduction of the Government's evidence. We are satisfied from a consideration of the entire record that the appellant had a fair trial. The fact that no objections were raised is, in our opinion, due to the prosecutor's studied effort to avoid offering any testimony the admissibility of which was questionable.

The appellant also complains that the attorney we appointed to prosecute this appeal has not adequately briefed the case and has failed to urge some of the grounds that the appellant would have the lawyer urge in his behalf. We have considered the brief, which we think adequately presents such points as are reasonably arguable. Additional points made informally by the appellant in a separate detailed written argument which he filed to supplement his lawyer's efforts were also discussed in oral argument before us and have been carefully considered. We are convinced that the defendant had the benefit of adequate counsel, both in the District Court and on appeal; that the Court-appointed lawyers have conscientiously and competently done the best they could to present every reasonably available defense and contention.

2. Another point made by the appellant is that he should have been furnished with copies of FBI reports of statements of prospective witnesses when he requested such reports in advance of the trial. After the appointment of the lawyers who tried the case, the pertinent reports were read to them by the Assistant United States Attorney in advance of the trial. Doubtless, for this reason the request for the production of the FBI reports was not renewed at the trial. To this situation, Jencks v. United States, 1957, 353 U.S. 657, 77 S. Ct. 1007, 1 L.Ed.2d 1103, of course, has no application, nor does Section 3500 of Title 18, U.S.C.A.

3. The appellant urges that the District Judge should have granted defense counsel's motion for a mistrial, upon the ground that the defendant and one of his witnesses, before the Court convened, were brought into the court room in manacles. The defendant was brought to the Eastern District of Virginia for trial from a federal penitentiary where he was serving a ten-year sentence upon a narcotics conviction. His witness was likewise under sentence after conviction for a felony. These restraints, however, were removed as soon as the two men took their seats. The use of the manacles as the men were led into the court room before the arrival of the Judge, seems, in light of all the circumstances, not excessive. Any adverse inference which the jury might have drawn

from seeing the handcuffs, if indeed they did see them, was sufficiently dispelled by the Judge when he charged the jury:

"You may have noticed in the course of the trial that the defendant and I believe one of the witnesses was handcuffed or manacled, shackled, as you wish to call it. Now that is not to prejudice you against either the accused or the witness. It is merely the carrying out by the Marshal of the control and responsibility imposed upon him by law of the defendant and of the witness because they are already in custody on another charge. They are not handcuffed because of this charge. It is not to be inferred that the Marshal or the Court or the Government thinks that they are guilty of this charge and, therefore, they are manacled. It is simply a regulation that is being effectuated by the Marshal."

See Lias v. United States, 4 Cir., 1931, 51 F.2d 215, affirmed 1931, 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505.

█ 4. In the course of the trial, Michael Botto, the appellant's former partner in violations of the narcotics law, testified that the appellant had admitted to him complicity in the kidnapping. The prosecutor opened Botto's examination-in-chief by asking him where he lived, but the witness declined to answer. On cross-examination the same question was asked by the defendant's lawyer, and again the witness refused to supply the information. Relying on the case of Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624, the appellant assigns error, but we can discover no error, because out of the presence of the jury the witness explained why he did not wish to disclose his address. The appellant now complains of his counsel's failure to press the matter further.

We are satisfied that the defense lawyer was doubtless influenced in his course by the fact that, as appears from the record, before the trial both he and Rich had been served with a list of the prospective witnesses, including Botto's name and his address in New York City. Moreover, since Rich and Botto were close friends and business associates, the latter's address in New York must have been well known to the defendant. Indeed, it was there that the admissions to which Botto testified took place. While denying the incriminating statement attributed to him, the defendant admitted his presence in Botto's apartment. Botto's New York address was of no apparent significance in itself, and the jury could have drawn no inference from that information. Sometimes, as the Alford case illustrates, inquiry as to the witness's home address is valuable to identify the witness with his environment and to reveal facts intended to discredit his testimony. Since in this instance the defendant knew whether any special significance attached to the witness's address, it was not necessary to elicit this information from Botto in order to impeach his credibility. Moreover, in extensive cross-examination by appellant's counsel, Botto admitted the details of his long criminal record. It is plain that neither the defendant nor his counsel was foreclosed from any information in regard to Botto's credibility by his failure to reveal his address on the witness stand.

█ 5. The appellant objects to the evidence of his identification by Sheriff Davis in a line-up in New York on the asserted ground that among those assembled, he was the only man of his general description. This contention was made before the jury, and defense counsel made much of it in attacking the identification. The composition of the line-up provided a sufficient test for Davis's identification of Rich to be of some probative value. It was not the only evidence that connected Rich with the kidnapping, and the jury was entitled to consider it in connection with the other testimony tending to implicate the appellant, such as Botto's recital of Rich's confession, the testimony of Rich's female companion on his trip to Baltimore, that Rich was out with the other men involved in the kidnapping on the nights in question, and the collapse of Rich's

claimed alibis. Cf. Baker v. State, 1956, 236 Ind. 55, 138 N.E.2d 641 and People v. Conley, 1949, 275 App.Div. 743, 87 N. Y.S.2d 745.

6. The appellant, in lengthy holographic communications, urges certain additional grounds, such as that certain witnesses were prejudiced against him; the indictment (which is in the language of the statute) is too vague and indefinite; the removal proceedings were improper; the jury was not locked up (though they did not disperse) at lunch time. We have considered every intelligible contention raised by him, even some which were not advanced in earlier stages of the proceedings, and we find no merit in any of them.

7. Because of the gravity of the charge, the commensurate severity of the sentence, and the appellant's insistent attack upon his lawyers, we have painstakingly examined the record with especial thoroughness to satisfy ourselves of the sufficiency of the evidence to support the jury's verdict. We need not repeat the evidence in detail; it is sufficient to say that we find abundant basis for the conviction.

Affirmed.