EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO APONTE GONZÁLEZ, LINO COLÓN PERAZA, BLAS ADORNO MEDINA y PEDRO RIVERA MATEO, acusados y apelantes.

*Número:* 16639. *Resuelto:* 20 de septiembre de 1961.

512

*Santos P. Amadeo, Charles H. Juliá, C. Andreu Ribas, M. López Carrillo* y *Francisco Coll Moya,* abogados de los acusados y apelantes; *J. B. Fernández Badillo, Procurador General de Puerto Rico* y *Arturo Estrella, Procurador General Auxiliar,* abogados de El Pueblo, apelado.

Sala integrada por el Juez Asociado Señor Hernández Matos, como Presidente de Sala, y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El fiscal Herminio Miranda, hijo, presentó acusación contra los cuatro apelantes Pedro Aponte González, Lino Colón Peraza, Blas Adorno Medina y Pedro Rivera Mateo por el delito de robo, consistente en que sustrajeron de la persona de Ramón Fernández Serra, en su inmediata presencia y por medio de la fuerza y de la violencia, la cantidad de cinco mil dólares en efectivo, todo ello en contra de la voluntad del mencionado perjudicado. (Artículo 238 del Código Penal, 33 L.P.R.A. sec. 851.) Celebrado el proceso correspondiente el jurado rindió veredicto de culpabilidad contra los cuatro acusados, y fueron sentenciados a cumplir una pena indeterminada de uno a diez años de presidio. Contra esta sentencia se interpuso recurso de apelación. Se señala la comisión de cinco errores.

## I

Se plantea como primer error la aceptación como válido de un veredicto por mayoría por ser contrario a las cláusulas del debido proceso de ley de las Enmiendas Quinta y Décimocuarta de la Constitución de Estados Unidos. Idéntica

impugnación fue rechazada en *Fournier* v. *González*, 80 D.P.R. 262 (1958), confirmado en 269 F.2d 26 (1959). Véase, también, *Jaca Hernández* v. *Delgado*, 82 D.P.R. 402, 406-409 (1961), en donde se considera nuevamente la cuestión a la luz de ciertos párrafos de la opinión emitida por el Tribunal Supremo federal en *Reid* v. *Covert*, 354 U.S. 1 (1957).

## II

Al terminar el interrogatorio directo del perjudicado, la defensa, en ausencia del jurado y el testigo, solicitó copia de la declaración jurada prestada por éste en la investigación del caso. El fiscal respondió que la única declaración jurada prestada ante él había sido ofrecida en evidencia en un recurso de hábeas corpus interpuesto por uno de los coacusados, y que la defensa tenía copia de la misma. Cf. *Rich* v. *United States*, 261 F.2d 536 (CA 4, 1958). Aclaró, sin embargo, que la declaración aludida era la única *por escrito* que el testigo había prestado, pero que "claro, eso no quiere decir que fuera esa la única que él prestara" (T.E. (1), pág. 35). Debido a que el acusado Lino Colón Peraza, peticionario en el recurso de hábeas corpus, había sido encarcelado desde o antes del día 9 de septiembre, después de haberse encontrado causa probable en su contra por el Juez de Distrito Rafael F. Marchand, y a que la declaración jurada entregada tenía fecha posterior—11 de septiembre—, la defensa insistió en que se le informara si había alguna otra declaración. Nuevamente el fiscal, después de aclarar que no había participado en la investigación que culminó en la determinación de causa probable, manifestó que no tenía en su poder ninguna otra declaración escrita. El incidente terminó con la expedición de una orden al magistrado instructor para que compareciera y trajese consigo cualquier documento que hubiese considerado para determinar la existencia de causa probable. Luego, en la repregunta, el perjudicado

manifestó que había declarado oralmente bajo juramento por primera vez ante "el juez de Guaynabo", pero no ante el Juez Marchand (T.E. (1), págs. 62–63; T.E. (3), págs. 6–9, 41). Esto probablemente explica porqué, a pesar de la tenacidad con que la defensa insistió en que se le entregaran las declaraciones juradas prestadas, posteriormente no insistió en ello ni en la comparecencia del mencionado juez. Cf. *Rodgers* v. *United States*, 267 F.2d 79, 90 (CA 9, 1959).

 Hace apenas unos días adoptamos como norma procesal en esta jurisdicción, aquélla que permite al acusado obtener copia de cualquier declaración que haya prestado un testigo de cargo, si la solicitud se hace después del testimonio directo y durante la repregunta, y si la misma se refiere a los hechos en la causa que se ventila. *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961). Esta solución ya se vislumbraba desde *Pueblo* v. *Tribunal Superior*, 80 D.P.R. 702 (1958). Cf. *Pueblo* v. *Cortés*, 79 D.P.R. 818 (1957). Véanse además, *Jencks* v. *United States*, 353 U.S. 657 (1957) y *Campbell* v. *United States*, 365 U.S. 85 (1961). Es conveniente que aclaremos que bajo la norma enunciada el ministerio fiscal viene obligado a entregar únicamente las declaraciones juradas escritas que tenga en su poder. En *De Freese* v. *United States*, 270 F.2d 737, 740 (CA 5, 1959) se dijo: "La regla del caso de *Jencks* no requiere que el gobierno suministre algo que no tiene y no puede obtener. En este caso, todo cuanto el gobierno tenía en su poder fue entregado al apelante... Esto es lo que la justicia y razonabilidad requieren." Y en *United States* v. *Place*, 263 F.2d 627, 631 (CA 2, 1959) se insinúa que el acusado está obligado a sentar las bases sobre la existencia de la declaración que se interesa. Compete pues al acusado gestionar la entrega de cualquier otra declaración escrita prestada por un testigo de cargo ante algún otro funcionario público, y especialmente ante aquellos que determinan causa probable. Claro está que si el fiscal tiene en el sumario copias de declaraciones escritas de dichos testi-

gos prestadas ante otros funcionarios debe facilitarlas, aun cuando no hayan sido tomadas por él. A este respecto vale la pena indicar que en las Reglas de Evidencia adoptadas por este Tribunal y remitidas a la Asamblea Legislativa, y aún pendientes de aprobación, el término "declaración" significa, no sólo una manifestación escrita hecha por el testigo, sino también "el récord estenográfico, mecánico, eléctrico, o de otra clase o la transcripción de dicho récord, que contenga una relación sustancialmente literal de la manifestación oral hecha por el acusado o el testigo o un funcionario del gobierno si el mencionado récord se hizo contemporáneamente con la manifestación oral". (Regla 105 (5)). Esta Regla 105 fue tomada de la Ley Jencks, 18 U.S.C. sec. 3500. Para la interpretación de sus disposiciones, véanse, *Palermo* v. *United States*, 360 U.S. 343 (1959); *Mosemberg* v. *United States*, 360 U.S. 367 (1959); *United States* v. *Simmons*, 281 F.2d 354 (CA 2, 1959); *United States* v. *Tomaiolo*, 280 F.2d F.2d 411 (CA 2, 1960); *United States* v. *Clancy*, 276 F.2d 617, 634 (CA 7, 1960); *United States* v. *Davis*, 262 F.2d (CA 7, 1959); *Sells* v. *United States*, 262 F.2d 815 (CA 10, 1958); Margolin, *Due Process and Right of Confrontation*, 58 Mich. L. Rev. 888 (1960); *Statutory Limitation of Jencks Decision*, 12 Vand. L. Rev. 939 (1959); *The Aftermath of the Jencks Case*, 11 Stan. L. Rev. 266 (1959); *Jencks Rule in State Courts: Jencks is not a Constitutional Mandate*, 34 Notre D. Law. 578 (1959). En cuanto a la inspección de declaraciones en pleitos civiles, véanse, *Hickman* v. *Taylor*, 329 U.S. 495 (1947); *Statements of parties or witnesses as subject of pretrial or other disclosure, production or inspection*, 73 A.L.R.2d 12 (1960).

## III

La acusación presentada contra el apelante Pedro Rivera Mateo fue en grado de subsiguiente por haber sido dicho acusado sentenciado anteriormente por el delito de homicidio voluntario y haber cumplido la sentencia

que le fuera impuesta. Antes de comenzar el juicio dicho acusado admitió la alegación sobre el delito subsiguiente, y en tal virtud el juez que presidía instruyó al secretario para que en la lectura de la acusación se omitiera el párrafo en el cual se hacía referencia a tal hecho, y le ordenó además para que, una vez leída la acusación, se transcribiera ésta nuevamente omitiendo tal alegación y que tal copia fuera entregada al jurado cuando se retirara a deliberar. Así se hizo.

Durante el curso del juicio no se hizo referencia alguna a esta convicción anterior. Tampoco se transmitieron instrucciones al jurado sobre delito subsiguiente. Sin embargo, al entregársele al jurado los formularios de veredicto, en el correspondiente al coacusado Rivera Mateo se consignó, a continuación del número del caso, que el delito por el cual se le acusaba era el de *robo subsiguiente*. En el veredicto rendido el presidente del jurado escribió de su puño y letra que se le declaraba "culpable del delito de robo." (T.E. (3), págs. 243 y 258.)

La regla local es al efecto de que cuando el acusado admite la alegación de subsiguiente, tal hecho no debe someterse a la consideración del jurado, y que en tal caso, lo procedente es entregarles una copia de la acusación de la cual se haya eliminado toda alegación relativa al delito anterior, *Pueblo* v. *Beltrán*, 73 D.P.R. 509, 517 (1952); *Pueblo* v. *González*, 80 D.P.R. 208, 210 (1958). Si el hecho consta de un escrito, debe entregarse al jurado una copia en la cual no se le mencione; si se trata de manifestaciones orales, éstas deben prohibirse absolutamente. *Pueblo* v. *Colón*, 81 D.P.R. 331, 334, 336 (1959). Esto es así porque en un proceso criminal el acusado solamente puede ser juzgado por el delito imputado en la acusación y, por tanto, no es admisible prueba sobre otros delitos por él cometidos, excepto cuando el delito anterior (a) es un hecho pertinente para establecer la comisión del crimen por el cual se le juzga; (b) forma parte del *res*

*gestae;* (c) puede demostrar motivo, intención, premeditación, malicia o un designio común; o (d) forma parte de la misma transacción, *Pueblo* v. *Archeval,* 74 D.P.R. 512, 515 (1953).

▮ Sin embargo, los hechos ocurridos en el presente caso no requieren que se aplique la regla expuesta, ya que el jurado no tuvo ante sí información alguna que relacionara al coacusado Rivera Mateo con otro *delito específico.* Además, en las instrucciones que se le transmitieron no se hizo referencia a esta cuestión y debemos presumir que el jurado se guió únicamente por dichas instrucciones para resolver sobre la culpabilidad o inocencia del acusado. Por otro lado, si consideramos que se trató de un proceso contra cuatro personas distintas, que la prueba demostró que todas ellas actuaron concertadamente en la ejecución del acto delictivo—especialmente el coacusado Rivera Mateo que tuvo una participación activa en el acto del despojo violento—y que el jurado rindió idéntico veredicto en cuanto a todas ellas, cualquier error en relación con el carácter subsiguiente del delito, de haberse cometido, no puede haber sido significativamente perjudicial en cuanto a Rivera en su carácter individual.

▮ Por otro lado, el error, de haberse cometido no fue perjudicial al acusado, ya que al pronunciar sentencia el tribunal de instancia obviamente no consideró el grado de subsiguiente pues le impuso—al igual que a los otros coacusados—una sentencia indeterminada de uno a diez años de presidio. De haberse tomado en consideración el carácter de subsiguiente, según admitido por el coacusado Rivera Mateo, el término mínimo a que ha podido ser sentenciado era de diez años. (Art. 56 del Código Penal, 33 L.P.R.A. sec. 131; art. 285 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 816.)

No obstante, deseamos llamar la atención a los funcionarios de los tribunales para que se evite la repetición de actos como los aquí relatados. La pureza absoluta de procedimiento

causativo es la mejor garantía que pueden brindar los tribunales a los acusados. En adición a las medidas adoptadas por el juez de instancia en cuanto a la eliminación de toda referencia en la acusación al delito anterior, el secretario ha podido asegurarse mediante una ligera inspección que en los formularios de veredicto no apareciera el calificativo de subsiguiente.

## IV

Los apelantes Pedro Aponte González y Lino Colón Peraza alegan que el veredicto de culpabilidad rendido en su contra es contrario a la prueba ya que no se estableció que ellos usaran fuerza o violencia para despojar al perjudicado del dinero que se alega fue robado. Aun cuando se probó que fueron los otros dos coacusados Blas Adorno Medina y Pedro Rivera Mateo quienes intervinieron físicamente con la víctima, no es menos cierto que el acto delictivo fue el resultado de un plan cuidadosamente urdido, mediante el cual los cuatro acusados, de común acuerdo y con singular audacia, atrajeron al perjudicado al lugar en donde fue asaltado. Pedro Aponte González simuló ser el rico agricultor "don Manuel González" interesado en adquirir un negocio que Fernández Serra tenía a la venta; Lino Peraza pasó como el chófer de "González" cuando éste visitó a Fernández en Ponce y le invitó a venir a San Juan. Además, en ejecución de la trama concebida, ambos participaron en la reunión en que se dio el golpe de gracia.

La mera presencia durante la comisión de un delito no es suficiente por sí sola para sostener una convicción, *People* v. *Flores*, 172 N.E.2d 640 (1961); *People* v. *Stanford*, 1 Cal. Reptr. 425 (1959), pero este hecho puede considerarse conjuntamente con las otras circunstancias que rodean el hecho delictivo a los fines de la determinación de responsabilidad, *People* v. *Carlson*, 2 Cal. Rptr. 117 (1960). No es indispensable, pues, que el acusado ejecute personalmente el acto delictivo y basta con su presencia pasiva, siempre que su

responsabilidad como co-autor pueda establecerse por actos anteriores, o como el resultado de una conspiración en que participó, *State* v. *Yoshida,* 261 P.2d 1032 (Haw. 1961); *State* v. *Pundy,* 156 A.2d 193 (Conn. 1959); *People* v. *Lampkin,* 6 Cal. Rptr. 596 (1960); *State* v. *Slade,* 338 S.W.2d 802 (Mo. 1960); *Commonwealth* v. *Lawrance,* 163 A.2d 690 (Pa. 1960), o de un designio común, *State* v. *Tolias,* 326 S.W.2d 329 (Mo. 1959). Bajo los hechos reseñados anteriormente forzoso es concluir que tanto Aponte González como Colón Peraza responden como coautores no obstante su participación pasiva en el hecho físico del despojo violento de que fue víctima el perjudicado. Artículo 36 del Código Penal (32 L.P.R.A. sec. 82); *Pueblo* v. *Castro,* 75 D.P.R. 672 (1953); *Pueblo* v. *Rivas,* 68 D.P.R. 474 (1948); *Pueblo* v. *Gonzalo,* 47 D.P.R. 714 (1934); *Pueblo* v. *Méndez,* 39 D.P.R. 930 (1929); *Pueblo* v. *Paz,* 12 D.P.R. 99 (1907).

Como último error los apelantes señalan que el veredicto es contrario a la prueba ya que el jurado actuó con pasión y prejuicio al condenarles en vista del testimonio de Ramón Fernández Serra tomando en consideración todas las circunstancias relacionadas con el delito que se les imputaba. Hemos examinado con cuidado la prueba presentada, y la ofrecida por el ministerio público sostiene la conclusión a que llegó el jurado en su función de dirimir el conflicto de la prueba. Obviamente no se le dio crédito a la versión de los acusados que tendió a establecer que el perjudicado no fue víctima de un robo sino que perdió el dinero en un juego ilícito en que participó con ellos. Siendo ello así, no podemos alterar el resultado. *Pueblo* v. *Cordero,* 82 D.P.R. 379, 388 (1961); *Pueblo* v. *Rodríguez,* 80 D.P.R. 299 (1958); *Pueblo* v. *Morales,* 79 D.P.R. 605, 611 (1956).

*No habiéndose cometido los errores señalados por los apelantes, se confirmarán las sentencias dictadas por el Tribunal Superior, Sala de San Juan, en 5 de mayo de 1958.*